TURNER v. WESTON et al.

(Supreme Court, General Term, Fifth Department. October 23, 1891.)

1. ACCOUNTING—WHEN ACTION WILL LIE.

Plaintiff, having an opportunity to purchase timber lands, entered into an agreement with defendants, who were partners engaged in manufacturing and selling lumber, by the terms of which they were to purchase the lands together, and convert the timber into lumber. Plaintiff was to own an undivided half interest and defendants the other half, defendants to take sole charge of converting the timber into money, and account to plaintiff for half the profits. The contract was carried out for a number of years, defendants rendering plaintiff yearly statements. *Held* that, even if the parties were not partners, their relations were such as entitled plaintiff to sue defendants for an accounting.

2. SAME—SET-OFF AND COUNTER-CLAIM.

In such an action defendants cannot set off against plaintiff's claim their claims against other lumber firms of which plaintiff is a member.

Appeal from judgment on report of referee.

Action by Alexander S. Turner against William W. Weston and others for an accounting. Judgment for plaintiff was entered on the report of a referee, and defendants appeal. Affirmed.

Argued before DWIGHT, P. J., and LEWIS and MACOMBER, JJ.

*Bolles & Waring*, for appellants. *Roswell R. Moss*, for respondent.

LEWIS, J. The plaintiff and a Mr. Ross, having the opportunity of purchasing a large tract of pine timber lands in the state of Pennsylvania in the year 1863, entered into an agreement with defendants, who possessed large facilities for manufacturing and selling lumber and shingles, and were doing business as a firm under the name of Weston Bros. By the terms of the agreement the parties were to purchase the Pennsylvania lands, consisting of about 2,000 acres, and were to proceed to convert the timber thereon into lumber and shingles. The plaintiff and Ross were to own an undivided half interest, and the defendants the other half. The defendants were to take sole charge of converting the timber into money, and account to the plaintiff and his partner Ross for one-half of the profits, after deducting the cost and expenses of manufacturing and selling the lumber and shingles. The defendants entered upon the performance of the work in the year 1864, and continued the business for about 12 years. Mr. Ross, in the year 1869, transferred his interest in the contract, lands, and business to the plaintiff. At the commencement of each year the defendants rendered to the plaintiff a statement of the transactions of the previous year. The statements purported to give an accurate account of the logs cut and skidded, the quantity delivered at the mill, the amount of boards and shingles manufactured, and of the sales, and a detailed statement of all expenses attending the business. The plaintiff had nothing to do personally with the business of manufacturing or selling lumber. The parties selected as the name of their business or copartnership the figure "5," and the business was done and the accounts were kept in the name of "5 lumber." Satisfactory statements of the business were rendered to the plaintiff annually up to the year 1868. Upon the receipt of the statement of account for the year 1868, the plaintiff complained to the defendants that it did not contain a full account of all the lumber manufactured and sold for that year. The plaintiff continued to complain as to the correctness of the. accounts down to the year 1878, when he commenced this action against the defendants for an accounting of the transactions concerning the business. The case was referred to the Honorable Charles E. Parker, as sole referee, to hear, try, and determine.

The trial commenced in 1878, and was continued, from time to time, for more than seven years, and on the 15th day of January, 1886, the referee made a report, and found that the relation existing between the parties was that of copartners; that the total amount of pine lumber manufactured by the de-

fendants from the tract, exclusive of shingles, was 31,625,284 feet; that the total amount of pine lumber sold by them, exclusive of shingles, for which they had rendered an account, was 24,832,097 feet, and that they had on hand, unsold, 92,655 feet, leaving a deficiency between the amount sawed and the amount accounted for as sold and on hand, 6,700,532 feet; that the natural and ordinary waste and shrinkage arising from defective logs, breakage, errors in measurements in accounts rendered by the sawyers, and from all other causes naturally and usually incident to the manufacture and selling of such lumber, did not exceed 3,700,530 feet; that the balance of the deficiency, namely, 3,000,000 feet, had been appropriated by the defendants to their own use, in addition to the amounts which they had credited to the business in their accounts, and that the value thereof should be charged against them in the accounting; that such deficiency had accrued and been appropriated by the defendants to their use in different amounts during the years from January 1, 1869, to January 1, 1878, and that the average value of the total amount of lumber belonging to "5" sold by the defendants during those years was $20.14 per thousand feet; and that the 3,000,000 feet charged against the defendants was of the average quality of lumber, and was of the value of $60,420 at the time it was appropriated. He further found that, in addition to the pine lumber, the defendants took off from the tract and manufactured into lumber and sold during the time mentioned 195,680 feet of hard-wood lumber, and had only accounted for 44,088 feet thereof, leaving a balance of 151,592 feet unaccounted for, and which they had appropriated to their own use, and that this hard-wood lumber was worth $27 a thousand feet, amounting in value to the sum of $4,092.90. The defendants had on hand at the time of the commencement of the action a considerable quantity of lumber which they appropriated, and for which they should be charged. The referee finds that there was no agreement fixing the price for such lumber, but that it was worth $20.14 a thousand. There was a quantity of shingles on hand, which, by arrangement between the parties, was charged to the defendants, and forms part of the amount found due from the defendants by the referee. The referee found that the defendants were indebted to the copartnership in the sum of $132,228.68, and that the plaintiff was entitled to judgment against the defendants for one-half of such sum, with costs, and directed judgment to be entered accordingly.

The contention of the appellants that the referee erred in finding that the relation between the parties was that of copartners is of no importance, for, whether copartners or not, their relations concededly were of such a character as to entitle the plaintiff to maintain this action for an accounting. The plaintiff was a member of several firms dealing in lumber, and the defendants, from time to time, sold to these firms quantities of lumber. A part thereof was the "5" lumber, and the balance was lumber belonging to the defendants obtained from other sources. The evidence tended to show that there was a balance of about $15,000 due to the defendants from these various firms on account of lumber thus sold. The defendants sought upon the trial to be allowed, as a counter-claim, this sum of $15,000. The referee refused to allow the claim, and the appellants contend that he erred in so finding. The action, as we have seen, was for an accounting between the parties as to transactions growing out of the lumber manufactured and known as "5" lumber. This claim was not against the plaintiff individually, but was against the different firms of which he was a member. No counter-claim is pleaded in the answer; no mention is made of this claim. There was not, therefore, any issue before the court for trial as to this claim of $15,000. While it is true that some of the "5" lumber went to make up this claim, that is a matter of no importance in view of the manner in which the defendants transacted the business of the "5" lumber. While the defendants were engaged in manufacturing the No. 5 lumber they were, at the same time, saw-

ing large quantities of other lumber in the same mill. They charged themselves with the "5" lumber and with the proceeds of the sales, and credited themselves with the expenses of the business, treating the lumber as their own. The claim belonged to the defendants, and not to the firm. It was not a proper item to be taken into consideration in accounting between the members of the firm, and it was so held by this court in an action which was brought by the appellants against the assignee of this judgment to obtain a judgment directing the claim of $15,000 to be set off against the judgment. *Weston* v. *Turner*, 8 N. Y. St. Rep. 296.

Appellants further claim that the referee erred in finding that the defendants had failed to account for all of the "5" lumber, and had appropriated the amount mentioned. The defendants, as we have seen, had the entire charge and control of the manufacture and sale of the lumber. Plaintiff had nothing to do with the details of the business. He did not reside near the mill where the lumber was being manufactured. The enterprise involved large interests and responsibilities on the part of the defendants. It was incumbent on them to keep strict and accurate accounts of the manufacture and sales of the lumber. There was a very large amount of evidence tending to show that the business was carelessly and negligently performed by the defendants and their employes. The accounts were kept in a very unsatisfactory manner. There was a large and surprising discrepancy appearing in their accounts between the amount of lumber manufactured and the sales. The amount of lumber sawed, as shown by the saw-bills, was 31,625,284 feet; the amount reported as sold and on hand was but 24,924,752 feet,—a shortage of 6,700,532 feet. The defendants gave evidence tending to explain this shortage by the natural wastage of lumber between the saw and the sales. The evidence upon this subject was very conflicting, and the referee found from the evidence that the natural and ordinary waste from all of these causes did not exceed 3,700,530 feet, and that the defendants had failed to account for 3,000,000 feet of the pine lumber manufactured from the tract; and we think this finding of the referee was sustained by the evidence. There was an attempt made at the mill to keep No. 5 lumber separated from other lumber being manufactured at the same time, but the evidence tended to show that the various brands of lumber were commingled while being sawed, piled, and sold, which may account in a measure for the errors of the defendants in the management of the business. As we think the referee's findings of fact are sustained by the evidence, it is unnecessary to consider the questions discussed at such great length in the briefs of counsel, as to whether the referee's findings of fact are properly before this court for review. We have examined the exceptions of the appellants to the admission and rejection of evidence, and find nothing in them justifying a reversal of the judgment. The trial of the case extended over a period of more than seven years. A very large amount of testimony was taken, and the learned referee appears to have given the case an exceedingly careful and intelligent consideration, and we think his conclusions did no injustice to the defendants. The judgment should be affirmed, with costs of the appeal against the appellants.

All concur.